UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X
                                                              :
NEW YORK JETS LLC and                                         :     Case No. 05-CV-2875 (HB)
JETS DEVELOPMENT LCC,                                         :
                                                              :
                                    Plaintiffs,               :
                                                              :
            v.                                                :
                                                              :
CABLEVISION SYSTEMS CORPORATION,                              :
CSC HOLDINGS, INC., and                                       :
MADISON SQUARE GARDEN, LP,                                    :
                                                              :
                                    Defendants.               :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR CERTIFICATION UNDER 28 U.S.C. §1292(b) AND A STAY OF
PROCEEDINGS PENDING APPEAL**

Marc E. Kasowitz (MK-2597)            David Boies (DB-4399)
Daniel R. Benson (DB-6587)            BOIES, SCHILLER & FLEXNER LLP
Daniel J. Fetterman (DF-9093)         333 Main Street
KASOWITZ, BENSON, TORRES              Armonk, New York 10504
   & FRIEDMAN LLP                     914-749-8200
1633 Broadway
New York, New York 10019              Robert J. Dwyer (RD-6457)
212-506-1700                          Paul R. Verkuil (PV-5978)
                                      Alanna C. Rutherford (AR-0497)
                                      BOIES, SCHILLER & FLEXNER LLP
                                      570 Lexington Avenue
                                      New York, NY 10022
                                      212-446-2300

                                      *Of Counsel:*
                                      Jonathan D. Schiller
                                      BOIES, SCHILLER & FLEXNER LLP
                                      5301 Wisconsin Avenue NW
                                      Washington, DC 20015
                                      202-237-2727

Dockets.Justia.com

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................................... ii

Preliminary Statement ................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.     CABLEVISION FAILS TO SATISFY THE REQUIREMENTS OF A
§1292(b) MOTION IN THE CONTEXT OF A MOTION TO DISMISS ................... 2

II.    THERE IS NO "SUBSTANTIAL GROUND FOR DIFFERENCE OF
OPINION" AS TO A "CONTROLLING QUESTION OF LAW" IN THIS
CASE, AND THEREFORE NO SATISFACTION OF THOSE
CONDITIONS OF §1292(b) ....................................................................................... 3

     a.  Cablevision's Sham Litigation ............…………………………………………..4

     b.  Cablevision's Sham Bid for Development Rights………………………………...6

     c.  Cablevision's Refusal to Accept Jets' Advertisements…………………………..8

     d.  Cablevision's Claim that Jets' Stadium Plans Failed Because of Government
Intervention………………………………………………….……………………....9

CONCLUSION............................................................................................................................. 11

## TABLE OF AUTHORITIES

### Cases

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985). . . . . . . . . . 8, 9

*Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F.Supp.2d 578
(W.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972). . . . . . . . . 5, 6

*Caraballo-Seda v. Municipality of Hormigueros*, 395 F.3d 7 (1st Cir. 2005). . . . . . . . . . 2

*City of Columbia v. Omni*, 499 U.S. 365 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*E.E.O.C. v. Maggies Paratransit Corp.*, 351 F.Supp.2d 51 (E.D.N.Y. 2005). . . . . . . . . . 3

*Eastman Kodak Co. v. Image Tech. Serv.*, 504 U.S. 451 (1992) . . . . . . . . . . . . . . . . . . . 9

*German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp. 1385 (S.D.N.Y. 1995) . . . . 3

*Jacques v. DiMarzio, Inc.*, 216 F.Supp.2d 139 (E.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . 3

*Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . 2

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
71 F.Supp.2d 139 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*New York Jets LLC and Jets Development LLC v. Cablevision Systems Corp.*,
2005 WL 2649330 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 9, 10

*Primetime 24 Joint Venture v. NBC, Inc.*, 219 F.3d 92 (2d Cir. 2000) . . . . . . . . . . . . 4, 5

*Prof'l Real Estate Inv. v. Columbia Pictures Indus.*, 508 U.S. 49 (1993). . . . . . . . . . . 4, 6

*USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council*,
31 F.3d 800 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp.*, 964 F.2d 85 (2d Cir. 1992). . . . . 3

## Preliminary Statement

By filing a motion seeking certification under 28 U.S.C. §1292(b) and a stay of proceedings pending appeal, Cablevision attempts to circumvent federal court policy and case law which frown on interlocutory appeals of unsuccessful motions to dismiss. The Second Circuit confines certification of §1292(b) motions to exceptional circumstances not present in this case. Cablevision neither provides new arguments as to why the Court should have granted the motion to dismiss nor satisfies the prerequisite conditions of §1292(b). Cablevision's motion to amend this Court's order on motion to dismiss and seek certification under §1292(b) and a stay of proceedings pending appeal is nothing more than a rehash of Cablevision's three previous briefs and two oral arguments. Cablevision's motion was interposed solely for purposes of delay, in continuation of Cablevision's earlier unsuccessful efforts to delay the case.[1] Cablevision's motion for a stay is simply another part of its continuing strategy to delay the resolution of this action by attempting to sidetrack the case for months of briefing in the Second Circuit.[2]

---

[1] In June 2005, Cablevision asked for an elongated discovery schedule, contemplating a trial in the fall of 2007, in disregard of this Court's standing orders. After this Court adopted a schedule consistent with its standing orders and the Jets proposal, leading to a June 2006 trial date, Cablevision's counsel again asked (at the end of the September 27 oral argument) for an elongated discovery period. The Court granted Cablevision's request on October 17, extending the trial date to August 2006.

[2] Cablevision's characterization that it is requesting "a brief stay pending resolution of Cablevision's appeal" is simply untrue. Cablevision's request has the potential for creating delay due to appellate briefing, argument and decision of the motion and certified interlocutory appeal beyond the August 2006 trial date currently scheduled. An interlocutory appeal will not hasten the litigation process. Resolution of this action would be delayed – not expedited – by a certified appeal to the Second Circuit.

1

## ARGUMENT

### I.    CABLEVISION FAILS TO SATISFY THE REQUIREMENTS OF A §1292(b) MOTION IN THE CONTEXT OF A MOTION TO DISMISS.

For an order to be considered for §1292(b) certification, it must (1) "involve[] a controlling question of law", (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." From a procedural standpoint, an appeal of an order denying a motion to dismiss order can seldom satisfy §1292(b)'s requirements, because a court must accept plaintiff's allegations as true.

In the Second Circuit, §1292(b) "is a rare exception to the final judgment rule that generally prohibits piecemeal appeals", and the "use of §1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation." *Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865-66 (2d Cir. 1996). The Second Circuit based that holding on "a basic tenet of federal law"--"to delay appellate review until a final judgment has been entered." *Id.,* at 865, *citing Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475 (1978). As the Second Circuit continued, "Section 1292(b) vests review of an interlocutory order within our discretion and we may decline at any time to decide the issue presented…[because] §1292(b) was not meant to substitute an appellate court's judgment for that of the trial court." *Id.*, at 866

This is consistent with the overall policy judgment that there is no right of appeal on a denial of a motion to dismiss. *See Caraballo-Seda v. Municipality of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005) ("In the instant case, we see no reason to depart from our general rule prohibiting interlocutory appeals from the denial of a motion to dismiss."). This is also consistent with Second Circuit policy finding certification appropriate only in

2

"exceptional circumstances." *See, e.g., Jacques v. DiMarzio, Inc.*, 216 F.Supp.2d 139,

145 (E.D.N.Y. 2002) (only "exceptional circumstances" justify a departure from the basic

policy of postponing appellate review until after entry of a final judgment), *citing*

*Coopers,* 437 U.S. at 475; *E.E.O.C. v. Maggies Paratransit Corp.*, 351 F.Supp.2d 51, 54

(E.D.N.Y. 2005) ("the better approach is to use interlocutory appeal judiciously,

implementing it only when truly necessary"); *German v. Fed. Home Loan Mortgage*

*Corp.,* 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995) ("The Second Circuit has repeatedly

'urged the district courts to exercise great care in making a §1292(b) certification'…. It

is not intended as a vehicle to provide early review of difficult rulings in hard cases"),

*citing Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp.,* 964 F.2d 85, 89 (2d Cir.

1992); *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.,* 71 F.Supp.2d 139, 162

(E.D.N.Y. 1999) ("The legislative history, congressional design and case law indicate

that district court judges retain unfettered discretion to deny certification of an order for

interlocutory appeal even where the three legislative criteria of section 1292(b) appear to

be met").

## II. THERE IS NO "SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION" AS TO A "CONTROLLING QUESTION OF LAW" IN THIS CASE, AND THEREFORE NO SATISFACTION OF THOSE CONDITIONS OF §1292(b).

Cablevision's §1292(b) motion is simply Cablevision's latest effort to reargue

what it has already argued and lost in its moving, reply and supplemental briefs, as well

as in its two oral arguments. This Court has already considered Cablevision's *Noerr-*

*Pennington* arguments at an early stage and resolved them in its October 17 Order.[3] As

---

[3] Cablevision makes no showing that "continued litigation and discovery on the Jets' claims threatens to chill Cablevision's participation in this (and other) protected petitioning conduct." *See* §1292(b) Motion, at

*Footnote continued on next page*

3

demonstrated below, Cablevision does not offer any new arguments in its motion and fails to prove that there is "substantial ground for difference of opinion" as to a "controlling question of law." Cablevision's §1292(b) motion is thus insufficient to constitute a "rare exception" to an established Second Circuit final judgment rule.

### a. Cablevision's Sham Litigation

Cablevision argues that "[t]his Court has misinterpreted the clear holding of the Supreme Court" in *Prof'l Real Estate Inv. v. Columbia Pictures Indus.* ("*PRE*"), 508 U.S. 49 (1993) by refusing to decide *PRE*'s objective prong as a matter of law and instead focusing only on the subjective prong. *See* §1292(b) Motion, at 2-4. However, this simply restates what Cablevision has unsuccessfully argued numerous times before. *See, e.g.,* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Br."), at 14-15; Reply Memorandum in Support of Defendants' Motion to Dismiss ("Def. Reply Br."), at 7-8; Defendants' Memorandum in Response to the Court's July 27, 2005 Order ("Def. Supp. Br."), at 11-12. It also gets the standard of review in sham litigation cases wrong.

As both the Second and Ninth Circuits have recognized, the *PRE* test of retrospective proof that a suit is objectively baseless only applies to the filing of a single action. *Primetime 24 Joint Venture v. NBC, Inc.,* 219 F.3d 92, 100-101 (2d Cir. 2000); *USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council,* 31 F.3d 800, 811 (9th Cir. 1994). In situations such as this in which the defendant is accused of bringing a series of legal proceedings, the test is **prospective** not retrospective.

---

*Footnote continued from previous page*
9. Cablevision has already presented its baseless fear of chilled litigation and the Court presumably rejected that argument. *See* Def. Supp. Br., at 2.

*Primetime,* 213 F.3d at 101; *USS-POSCO,* 31 F.3d at 811. The key issues are "were the filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment. . . . The relevant issue is whether the legal challenges are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *Primetime,* 213 F.3d at 101.

The Jets have already discussed this point in prior briefs. For instance, in Plaintiffs' Memorandum in Opposition to Motion to Dismiss ("Pl. Opp. Br."), at 16 (citing Complaint ("Compl.") ¶¶36, 36C, 50-52), the Jets identify the specific factual allegations that Cablevision's litigations were baseless and brought solely for the purpose of harassment and injury. In particular, because Cablevision sought to invalidate the very Environmental Impact Statement ("EIS") on which its proposal to acquire the West Side Rail Yard site depended, its litigation against the EIS could only have been instituted to increase the Jets' costs and to delay and ultimately to destroy the Jets' development of the New York Sports and Convention Center. As the Jets noted in their Supplemental Brief in Opposition to Defendants' Motion to Dismiss the Complaint ("Pl. Supp. Br."), at 12, five of the relevant litigations, all involving the same core facts, have been dismissed, and the two remaining cases appear to be inactive. These facts not only fulfill the test for objectively baseless filings whether reviewed prospectively or retrospectively, but demonstrate that these points have been argued and discussed at length.[4]

---

[4] The Jets also discuss and refute the significance of Cablevision's cited cases throughout the pleadings. *See* Jets' discussion of *PRE* in Pl. Opp. Br., at 16; discussion of *Prime Time 24 Joint Venture v. Nat'l Broad. Co., Inc.,* 219 F.3d 92, in Pl. Supp. Br. at 11; discussion of *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508 (1972), in Pl. Supp. Br., at 11-12.

Furthermore, the Court discusses and resolves the issue of Cablevision's sham litigation in its opinion. *See New York Jets LLC and Jets Development LLC v. Cablevision Systems Corp., ("Jets")*, 2005 WL 2649330, *9 (S.D.N.Y. 2005). The Court notes that the "*Noerr-Pennington* immunity is not absolute…it does not protect the filing of 'sham litigation.'" *Id.* The Court also cites to key Supreme Court and controlling Second Circuit cases outlining the standard in regard to sham litigation. *Id.* (*citing Cal. Motor Transp. Co.*, 404 U.S. at 516; *PRE*, 508 U.S. at 60-61. Finally, the Court refers to the Jets' allegation that Cablevision's litigation was objectively baseless and brought for purposes of delay. *See Jets*, 2005 WL 2649330 at *9, *citing* Compl. ¶¶ 36C, 51. Due to the procedural posture of a motion to dismiss, the Court did not evaluate the sham litigation allegation claim on its merits, but did conclude that the Complaint stated sufficient allegations to refute a motion to dismiss. *Id.*[5] The extent to which the Court cited precedent and came to its conclusion based on the record before it demonstrates that there is no substantial ground for difference in its opinion necessitating a §1292(b) motion and a finding of "exceptional circumstances" justifying an interlocutory appeal.[6]

### b. Cablevision's Sham Bid for Development Rights

In its §1292(b) motion, Cablevision reiterates its argument that "the Court has misconstrued the sham test by ignoring the objective element of the test" and that in *PRE*, the Supreme Court held that successful petitioning of the government cannot be the basis

---

[5] That result is consistent with one of the cases cited by Cablevision, *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F.Supp.2d 578, 593 (W.D.N.Y. 2000), which states that a court can only decide whether sham litigation exists as a matter of law on a motion to dismiss "[w]here there is no dispute over the predicate facts of the underlying legal proceeding."

[6] Indeed, even this motion fits into the pattern of sham litigation in which Cablevision has engaged. As the Supreme Court has previously held "the filing of frivolous objections . . . simply in order to impose expense and delay" is the "classic example" of a sham. *City of Columbia v. Omni*, 499 U.S. 365, 380 (1991).

for a sham claim as a matter of law. Cablevision also suggests that its petitioning brought about successful government action, as evidence for the legitimacy of the bid. *See* §1292(b) Motion, at 4-5.[7] However, as with the sham litigation argument, Cablevision is simply restating what it has already argued unsuccessfully before. *See, e.g.,* Def. Br., at 14, 17-18; Def. Reply Br., at 8; Def. Supp. Br., at 12-14.

Likewise, the Jets have already dealt with these points in prior briefs. *See* Pl. Opp. Br., at 17, citing Compl. ¶¶ 36, 36D, 57, 59, 60. The Jets make specific factual allegations that Cablevision's February 2005 bid was objectively baseless and instituted solely to increase costs and delay the Jets' development of the New York Sports and Convention Center. In addition, after taking the limited discovery permitted by the Court, the Jets set forth factual support for their argument that Cablevision's only purpose in bidding was to hinder or stop the Jets from acquiring the land; Cablevision had no intention of buying the site and could not have been seeking government action. *See* Pl. Supp. Br., at 10-11.

The Court discusses these very points in its opinion at 2005 WL 2649330 at *10. The Court cites to the Compl. ¶¶ 36, 36D & 57 and the allegation that Cablevision submitted its bid "for the sole purpose of impeding Plaintiffs' plans to construct the Sports and Convention Center" without any "legitimate business rationale." Furthermore, the Court refers to the Jets' allegation that Cablevision "had no intention" of building on the site, but submitted the bid "solely for the purpose of delaying and derailing the Sports

---

[7] Cablevision makes the startling claim that it succeeded in petitioning the government, because the purpose of its February 4 letter proposal was to open up the bidding process. It is clear that Cablevision made a sham petition to the MTA to sell them the property and that petition failed. Cablevision's newly invented "purpose" should not be credited and cannot be resolved on a motion to dismiss. In any event, Cablevision's argument fully supports the Jets contention that Cablevision made the February 4 proposal solely to abuse governmental processes and create delay without ever intending to acquire the West Side Rail Yard.

and Convention Center." The Court concluded "that there are triable issues of fact concerning the viability of Cablevision's bid." However, "if the Jets can establish that Cablevision never intended to acquire the property, but submitted a bid only to impede the Jets' progress, immunity will be unavailable" and "[u]pon the record developed thus far, the Jets' claim is entitled to proceed." *Id.* The opinion shows that the Court recognized triable issues of fact necessitating a continuation of this litigation.

### c. Cablevision's Refusal to Accept Jets' Advertisements

Cablevision's §1292(b) motion reargues that "[n]o case has ever carved out an exception [to *Noerr*] for preventing a political opponent from airing political advertisements" and, in doing so, "this Court's October 17 Order sharply departs from unbroken Supreme Court and Second Circuit authority." §1292(b) Motion, at 5-7. Once again, this argument merely restates Cablevision previous arguments. *See, e.g.,* Def. Br., at 6, 11-13; Def. Reply Br., at 5-7.

The Jets countered Cablevision's arguments in prior briefs and demonstrated that Supreme Court precedent "reaffirmed that a monopolist may be held liable for a refusal to deal absent a valid business justification" and that these principles have repeatedly been applied to find Section 2 violations. *See* Pl. Opp. Br., at 12-13, *citing Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585 (1985); *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398 (2004). Furthermore, the Jets argued that Cablevision coerced third parties into refusing to deal with the Jets in order to maintain monopoly power, which is "blatant anticompetitive conduct without any conceivable legal justification." Pl. Opp. Br., at 14.

8

The Court's Opinion discusses the Jets' allegation that "Cablevision refused to air the Jets' advertisements in support of the Sports and Convention Center, and that Cablevision coerced other television stations into refusing to air the Jets' ads. (Compl.¶ 43)" and that "the right to 'refuse to deal' is not unrestrained" and "attempt[s] to exclude rivals on some basis other than efficiency" is an "anticompetitive practice." *Jets*, 2005 WL 2649330 at *8, *citing Eastman Kodak Co. v. Image Tech. Serv.,* 504 U.S. 451, 483 n. 12 (1992); *Aspen Skiing*, 472 U.S. at 605. In light of this, the Court found that the Jets had submitted enough evidence to defeat Cablevision's motion to dismiss.  In particular, the Court noted that while Cablevision is generally free to "refuse to engage in business with whomever it chooses, it may not do so when the purpose of such refusal is to maintain a monopoly.  As alleged, defendants' 'refusal to deal' was predicated on an impermissible purpose, and thus if proven would subject Cablevision to antitrust liability." *Jets*, 2005 WL 2649330 at *8. The Court clearly considered and rejected Cablevision's arguments and relied on solid precedent in so doing.

### d. Cablevision's Claim That Jets' Stadium Plans Failed Because of Government Intervention

Finally, Cablevision argues that, because the Court found that any defeat of the Jets' stadium was dependent on government intervention, "the Court should have dismissed all of the Jets' claims." §1292(b) Motion, at 7. This argument is simply a reassertion of arguments Cablevision has made—and lost—multiple times before. *See, e.g.,* Def. Reply Br., at 3; Def. Supp. Br., at 1-5.

The Jets rebutted these arguments in prior briefs, noting that Cablevision used government processes "merely as anticompetitive weapons, *regardless of the outcome of those processes,* which is the very heart of the sham exception to *Noerr-Pennington*

9

immunity." Pl. Supp. Br., at 1, 8, 10.  Moreover, it was the delay and costs inflicted by
Cablevision's relentless and continuing anticompetitive actions – not the June 6, 2005
vote of the PACB – that ultimately led the Jets to choose to build a stadium in New
Jersey rather than pursuing the West Side Rail Yard project.  Injury to the Jets was
caused by Cablevision's actions, not by the government's inaction.  In any event,
Cablevision's assertion that government intervention defeated the Jets stadium only raises
questions of fact that cannot be resolved on a motion to dismiss.[8]

When analyzing this issue in its opinion, the Court noted that, if Cablevision's
conduct was anticompetitive but aimed at procuring government action, Cablevision is
protected by *Noerr-Pennington. See Jets*, 2005 WL 2649330 at *6.  "However, a
meritless petition, submitted to impose undue delay and expense on a rival, will subject a
defendant to antitrust liability." *Id.*  Based on precedent, the Court found a sufficient
basis for defeating Cablevision's motion to dismiss and demonstrated that there was no
"substantial ground for difference of opinion" as to a "controlling question of law."

---

[8] Cablevision's assertion that discovery and trial schedule can be delayed by a stay pending appeal because
"the stadium project is dead" should not be given any weight.  The current trial schedule was set after the
stadium project was destroyed by Cablevision.

## CONCLUSION

For the foregoing reasons, Cablevision's motion for a stay and for §1292(b)

certification should be denied.

Dated: New York, N.Y.
      November 10, 2005

Marc E. Kasowitz (MK-2597)
Daniel R. Benson (DB-6587)
Daniel J. Fetterman (DF-9093)
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York  10019
212-506-1700

David Boies (DB-4399)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York  10504
14-749-8200

Robert J. Dwyer (RD-6457)
Paul R. Verkuil (PV-5978)
Alanna C. Rutherford (AR-0497)
BOIES, SCHILLER & FLEXNER LLP
570 Lexington Avenue
New York, NY 10022
212-446-2300

*Of Counsel:*
Jonathan D. Schiller
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, DC  20015
202-237-2727

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November, 2005, I caused a true and correct copy of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Certification Under 28 U.S.C. 1292(b) and a Stay of Proceedings Pending Appeal to be served by hand delivery, on the following counsel for Defendants Cablevision Systems Corporation, CSC Holdings, Inc., and Madison Square Garden, LP:

Randy Mastro
GIBSON, DUNN & CRUTCHER
200 Park Avenue
New York, N.Y. 10166

Donald M. Chiano