UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
NEW YORK JETS LLC and JETS DEVELOPMENT LLC,    :
                                                                            :
                                        Plaintiffs,    :
                                                                            :
                    -against-                                    :    05 Civ. 2875 (HB)
                                                                            :
                                                                            :    OPINION &
CABLEVISION SYSTEMS CORPORATION,    :    ORDER
CSC HOLDINGS, INC., and                              :
MADISON SQUARE GARDEN LP,                      :
                                                                            :
                                        Defendants.    :
-------------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

On March 16, 2005, Plaintiffs, New York Jets LLC and Jets Development LLC (collectively, the "Jets"), filed the instant action against Defendants Cablevision Systems Corporation, CSC Holdings, Inc., and Madison Square Garden, LP, (collectively, "Cablevision"). The Jets allege that Cablevision, the owner of Madison Square Garden and Radio City Music Hall, violated Section 2 of the Sherman Act, committed tortious interference and engaged in deceptive acts and practices in opposing the Jets' efforts to construct a football stadium on Manhattan's west side. On October 17, 2005, I granted in part Cablevision's motion to dismiss pursuant to Rule 12(b)(6) and the "Noerr-Pennington" doctrine. See New York Jets, L.L.C. v. Cablevision Systems Corp., 05 Civ. 2875, 2005 WL 2649330 (S.D.N.Y. Oct. 17, 2005). Defendants now move to amend the October 17th Order and to certify the matter for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Defendants also request a stay pending appeal. For the following reasons, defendants' motion is DENIED.


## DISCUSSION

The relevant facts underlying this action are set forth in my October 17th Opinion and Order. See Jets, 2005 WL 2649330. In sum, the Jets allege that Cablevision engaged in anti-competitive conduct by: 1) disseminating advertisements and public statements in opposition to the stadium project; 2) engaging in "sham" litigation to block the Jets'

1

Dockets.Justia.com

proposal; 3) submitting a "sham" bid to purchase the parcel on which the Jets hoped to construct their stadium; and 4) refusing to air the Jets' pro-stadium ads.  I granted defendants' motion to dismiss with respect to Cablevision's advertising campaign and denied the motion in all other respects.  Id. at 12.

A district court may certify an otherwise non-appealable order for interlocutory appeal when "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal . . . may materially advance the ultimate termination of the ligitation."  28 U.S.C. § 1292(b).  However, "district court judges have broad discretion to deny certification even where the statutory criteria are met."  Nat's Asbestos Workers Medical Fund v. Philip Morris, Inc., 71 F. Supp. 2d 139, 166 (E.D.N.Y. 1999).  Section 1292(b) constitutes "a rare exception to the final judgment rule that generally prohibits piecemeal appeals."  Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996).  In support of its motion for certification, defendants argue that this Court's October 17th Order is contrary to the weight of authority.[1]  Defendants further argue that the progress of this litigation may chill conduct protected by the First Amendment.

### A.  Sham Litigation

Cablevision brought several actions in state court to block the Jets' proposed stadium.  Plaintiffs identify two actions in the complaint, (Compl. ¶¶51-52), and refer to seven in their submissions in opposition to the Jets' motion to dismiss.  (Pl.'s Supp. Br., dated September 20, 2005, at 12).  Although some of these actions were brought by outside groups, plaintiffs contend that Cablevision funded and supported some of the litigation brought by third parties.  (Id.)[2]  While the Jets were a named defendant in only one action, (Def.'s Reply Mem. at 4), each action challenged aspects of the process by which the Jets were awarded development rights over the West Side Rail Yards.  Although certain actions appear to remain pending, and others have been dismissed as

---

[1] Although styled as a motion for certification, most of Cablevision's arguments are more akin to those made in support of reconsideration.

[2] In response, Cablevision points out that one action was brought by the New York City Public Advocate, and another by a non-profit organization, the Straphanger's Campaign, with which Cablevision is uninvolved.  (Def.'s Reply Mem., dated November 14, 2005, at 5).

moot, none of the actions have proceeded to judgment in favor of the opponents of the stadium.[3]

Cablevision asserts that, in refusing to dismiss the Jets' sham litigation claim, I misconstrued the Supreme Court's holding in Professional Real Estate Investors v. Columbia Pictures Industries, Inc., 508 U.S. 49 (1993). There the Court held that, to constitute a "sham," a lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Id. at 60. In addition, the litigation must "conceal[] an attempt to interfere directly with the business relationships of a competitor. . ." Id. at 60-61 (internal quotation omitted). In Primetime 24 Joint Venture v. National Broadcasting Company, Inc., 219 F.3d 92, 101 (2d Cir. 2000), the Second Circuit applied Columbia Pictures to a "defendant . . . accused of bringing a whole series of legal proceedings." (internal quotation omitted). In such cases, "it is immaterial that some of the claims might, as a matter of chance, have merit." Id. (internal quotation omitted).

Cablevision contends that I ignored Columbia Pictures' mandate to determine whether the allegedly sham lawsuits at issue here were "objectively baseless." See Jets, 2005 WL 2649330, at *9 ("on the record developed thus far I am unable to evaluate the merit, if any, of the state court actions"). Unfortunately, Cablevision confuses Columbia Pictures' "objective" standard with a determination that an action is meritless as a matter of law. Columbia Pictures requires district courts to evaluate a lawsuit's objective merits before determining that such suit can be the predicate for an antitrust violation. However, Columbia Pictures does not require that such determination be made on a motion to dismiss. A court can (and should) determine whether a litigant lacked "probable cause [to bring suit] as a matter of law . . . [when] there is no dispute over the predicate facts of the underlying legal proceeding." Columbia Pictures, 508 U.S. at 63.[4] However, where, as here, such facts are in dispute, there is no requirement that a court determine whether the "sham" exception applies without the benefit of full discovery.

---

[3] In my October 17th Order, I mistakenly noted that the action referenced in paragraph 52 of the complaint, challenging the environmental review process underlying the stadium proposal, had been dismissed. In fact, that action was pending until November 28, 2005, when it was voluntarily discontinued. (See Def.'s Letter, dated November 29, 2005).

[4] In Columbia Pictures, the allegedly "sham" copyright infringement action had proceeded to summary judgment. Columbia Pictures, 508 U.S. at 53.

To a degree, the state court litigations concerned the same factual issues implicated by this action. In state court, Cablevision, as well as third parties, challenged the process by which the Metropolitan Transportation Authority ("MTA") awarded development rights to the Jets. While the factual underpinnings of the state court actions are not identical to the questions presented here,[5] each of the state actions involved contested issues of fact.[6] As I determined in my October 17th Order, I cannot determine, as a matter of law, that Cablevision's state court actions were (or were not) objectively baseless.[7]

### B. Sham Bid

Cablevision argues that its bid to acquire the West Side Rail Yards cannot be characterized as a sham because: 1) Cablevision was successful in petitioning the MTA to open the bidding process; and 2) any harm suffered by the Jets as a result of Cablevision's bid resulted from the actions of the MTA rather than from Cablevision's behavior.

As set forth in my October 17th Order, the Jets have adequately alleged that Cablevision did not submit a viable proposal, but rather conveyed a sham bid merely to derail the Jets' progress toward building a stadium. (Compl. ¶¶ 57-60). Cablevision is not immune from potential antitrust liability merely because the MTA agreed to open the bidding process. The merits of Cablevision's bid, as well as its purpose, are factual questions that defy resolution here. "The 'sham' exception . . . encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." City of Colum. v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 380 (1991) (emphasis in original). Although Cablevision's bid was addressed to the MTA, the Jets have adequately alleged that Cablevision's actions were

---

[5] For example, this action does not concern the environmental review process conducted in connection with the redevelopment of the West Side Rail Yards.

[6] Contrary to defendants' assertions, neither the fact that the defendants in the state court actions failed to seek sanctions, nor the fact that plaintiffs in one action were granted discretionary leave to appeal the dismissal of that action by the Court of Appeals, is dispositive of whether the pattern of litigations at issue here constituted a "sham."

[7] On occasion it may be valuable for learned advocates to reexamine some history as to the function of the Courts. Of particular interest is Federalist #78, in which Alexander Hamilton advises as to how the Judiciary has "no direction either of the strength or of the wealth of the society; and can take no active resolution whatever. It may truly be said to have neither force nor will, but merely judgment. . ."

"not genuinely aimed at procuring favorable government action," but rather intended to harass a competitor by "impos[ing] expense and delay." Id. (internal quotation omitted).

### C.  Refusal to Air the Jets' Ads

Cablevision maintains that this Court erred in refusing to dismiss the Jets' claim that defendants' refusal to air the Jets' pro-stadium advertisements, as well as defendants' coercion of other television operators into similar refusals, violated the Sherman Act. However, Cablevision provides no valid reason to revisit my earlier conclusion.

The right to refuse to conduct business with competitors is not unrestrained, rather "it exists only if there are legitimate competitive reasons for the refusal." Eastman Kodak Co. v. Image Tech. Serv., 504 U.S. 451, 483 n.12 (1992).  Monopolists are permitted to choose with whom they conduct business so long as the purpose of their refusal to deal is not to create or maintain a monopoly.  Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 602 (1985).  Here, the Jets have adequately alleged that Cablevision lacked any rational business justification for its refusal to deal with the Jets.  (Compl. ¶¶ 43-44).[8]

### D.  Necessity of an Interlocutory Appeal

Cablevision argues that the issues discussed above constitute controlling issues of law, the resolution of which could avoid protracted litigation.  Cablevision further argues that the Noerr-Pennington doctrine is based on important constitutional considerations. Thus, Cablevision maintains that requiring it to defend behavior that may ultimately turn out to be protected by the First Amendment risks chilling protected conduct.  On the other hand, an interlocutory appeal, and its accompanying delay, will inevitably prejudice the party seeking relief.  Here, the resolution of these questions requires more extensive development of the factual record.  This is not that rare case where an immediate appeal would quickly bring the matter to a conclusion.  See Koehler, 101 F.3d at 865-66.

---

[8] Turner Broadcasting System, Inc. v. Federal Communications Comm'n, 512 U.S. 622 (1994), upon which Cablevision relies, is not to the contrary.  Turner examined the constitutionality of a federal statute regulating cable television operators, and did not address the relationship between the First Amendment and the Sherman Act.

## CONCLUSION

For the reasons set forth above, defendants' motion to certify this Court's October 17th Order for interlocutory appeal is DENIED. The Clerk of the Court is directed to close this motion. The discovery and trial schedule set forth in my October 17th Order remains in effect.

**SO ORDERED.**
**December  1 , 2005**
**New York, New York**

**U.S.D.J.**