UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
NEW YORK JETS LLC and                                       :
JETS DEVELOPMENT LLC,                                       :
                                                            :
                        Plaintiffs,                         :
                                                            :
            v.                                              :   05 Civ. 2875 (HB)
                                                            :   (ECF)
CABLEVISION SYSTEMS CORPORATION,                            :
CSC HOLDINGS, INC., and                                     :
MADISON SQUARE GARDEN LP,                                   :
                                                            :
                        Defendants.                         :
                                                            :
------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIMS
David Boies (DB-4399)                       Marc E. Kasowitz (MK-2597)
BOIES, SCHILLER & FLEXNER LLP               Daniel R. Benson (DB-6587)
333 Main Street                             Daniel J. Fetterman (DF-9093)
Armonk, New York 10504                      KASOWITZ, BENSON, TORRES
                                            & FRIEDMAN LLP
Robert J. Dwyer (RD-6457)                   1633 Broadway
Paul R. Verkuil (PV-5978)                   New York, New York 10019
Alanna C. Rutherford (AR-0497)
BOIES, SCHILLER & FLEXNER LLP
570 Lexington Avenue
New York, New York 10022

*Of Counsel*:
Jonathan D. Schiller
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, DC 20015

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS .......................................................................................................................................... 1

ARGUMENT ................................................................................................................................ 2

I.    CABLEVISION'S ANTI-SLAPP CLAIM MUST BE DISMISSED ............................... 2

II.   CABLEVISION FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS OR FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS CONCERNING ITS CABLE SUBSCRIBERS ................................................................................................................ 6

    A.    Cablevision Fails to Allege Tortious Interference with Existing Contracts ........... 7

    B.    Cablevision Fails to Allege Tortious Interference with Prospective Business Relations ................................................................................................... 8

III.  CABLEVISION FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS OR FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS CONCERNING CONSTRUCTION CONTRACTORS ............................................................................................................ 11

    A.    Cablevision Fails to Allege Tortious Interference with Existing Contracts ......... 12

    B.    Cablevision Fails to Allege Tortious Interference With Prospective Business Relations ................................................................................................. 13

CONCLUSION .......................................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page**

**Cases**

AIM Int'l Trading, L.L.C. v. Valcucine S.P.A.,
2003 U.S. Dist. Lexis 8594 (S.D.N.Y. May 22, 2003) ............................................................ 7

Carvel Corp. v. Noonan,
3 N.Y.3d 182, 818 N.E.2d 1100 (2004) .............................................................................. 9, 13

Catskill Dev., L.L.C. v. Park Place Entm't Corp.,
345 F. Supp. 2d 360 (S.D.N.Y. 2004) ..................................................................................... 9

Chevron U.S.A., Inc. v. Roxen Service, Inc.,
813 F.2d 26 (2d Cir. 1987) ...................................................................................................... 7

De Jesus v. Sears, Roebuck & Co.,
87 F.3d 65 (2d Cir. 1996) ........................................................................................................ 3

Friends of Rockland Shelter Animals, Inc. v. Mullen,
313 F. Supp. 2d 339 (S.D.N.Y. 2004) ............................................................................ passim

Henneberry v. Sumitomo Corp. of Am.,
2005 U.S. Dist. LEXIS 7475 (S.D.N.Y. Apr. 27, 2005) ....................................................... 10

Highland Capital Mgmt., L.P. v. Schneider,
2005 U.S. Dist. LEXIS 14912 (S.D.N.Y. July 26, 2005) ..................................................... 10

In re West Branch Conserv. Assoc. v. Hi-Tor Realty, Inc.,
222 A.D.2d 513, 636 N.Y.S.2d 61 (App. Div. 1995) ............................................................. 6

I.S. Sahni, Inc. v. Scirocco Fin. Group, Inc.,
2005 U.S. Dist. LEXIS 21876 (S.D.N.Y. Sept. 28, 2005) .................................................... 10

Kirch v. Liberty Media Corp.,
2004 U.S. Dist. LEXIS 19228 (S.D.N.Y. Sept. 27, 2004) .................................................... 11

Lewittes v. Cohen,
2004 U.S. Dist. LEXIS 9467 (S.D.N.Y. May 26, 2004) ................................................. 11, 13

Moscato v. TIE Techs., Inc.,
2005 U.S. Dist. LEXIS 867 (S.D.N.Y. Jan. 21, 2005) .......................................................... 10

Scutti Enters. LLC v. Park Place Entm't Corp.,
322 F.3d 211 (2d Cir. 2003) .................................................................................................... 8

Sedona Corp. v. Ladenburg Thalmann & Co.,
2005 U.S. Dist. LEXIS 16382 (S.D.N.Y. Aug. 9, 2005) .................................................... 7, 8, 9, 10

Small v. Arch Capital Group, Ltd.,
2005 U.S. Dist. LEXIS 23520 (S.D.N.Y. Oct. 12, 2005) .............................................................. 3

Wolff v. Rare Medium, Inc.,
210 F. Supp. 2d 490 (S.D.N.Y. 2002) ........................................................................................ 11

World Wide Communications, Inc. v. Rozar,
1997 U.S. Dist. LEXIS 20596 (S.D.N.Y. Dec. 30, 1997) ....................................................... 8, 12

**Statutes**

NY CLS Civ. R. § 76-a ................................................................................................................. 6

Plaintiffs New York Jets LLC and Jets Development LLC (collectively, "the Jets" or "Plaintiffs") respectfully submit this memorandum of law in support of their motion to dismiss Defendants' Amended Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

In flagrant disregard of this Court's well-reasoned opinion denying Cablevision's motion to dismiss and for summary judgment with respect to the *Noerr-Pennington* issues, Cablevision now brings before this Court an anti-SLAPP Counterclaim alleging that the Jets' claims lack a substantial basis in fact and law. Cablevision alleges that the Jets' claims are frivolous despite this Court's recent conclusion that each cause of action in the Jets Complaint is not frivolous and adequately states a claim. Consequently, the Jets respectfully request that the Court dismiss Cablevision's anti-SLAPP Counterclaim.

Similarly without merit are Cablevision's Amended Counterclaims for tortious interference with existing contracts and prospective business relations with Cablevision's cable subscribers and with several design and construction companies. Cablevision does not identify even one enforceable contract with any of its cable subscribers or any of these design and construction companies that was breached and fails to allege any wrongful interference whatsoever by the Jets. Cablevision's Counterclaims for tortious interference with existing contracts and prospective business relations are therefore defective as a matter of law and should be dismissed.

## FACTS

On March 16, 2005, the Jets commenced this action alleging that Cablevision willfully maintained, through anticompetitive conduct, its monopoly power in the markets for facility rental and ticket sales for large-scale events in enclosed spectator facilities and suite rentals in

Manhattan in violation of the Sherman Antitrust Act. The Jets also allege that Cablevision tortiously interfered with prospective business relations and violated N.Y. Gen. Bus. Law § 349. Thereafter, Cablevision moved to dismiss, relying heavily on *Noerr-Pennington* antitrust immunity, contending, among other things, that Cablevision's attempts to silence the Jets and its sham bid for the West Side Rail Yard could not be the basis for a monopolization claim under federal antitrust law.

After a full briefing of Cablevision's motion to dismiss, this Court ordered limited discovery restricted to the *Noerr-Pennington* defenses raised by Cablevision. *See* Order, dated July 27, 2005 (Baer, J.) ("July Order"). The parties then submitted additional briefing on the *Noerr-Pennington* issues, which reargued their respective legal positions, supplemented by the evidence disclosed during the limited discovery period. Based on this record, the Court converted Cablevision's motion to dismiss with respect to *Noerr-Pennington* to a motion for summary judgment. The Court carefully analyzed each of the Jets claims in a detailed Opinion & Order dated October 17, 2005 ("October Order"), held that all of them were well-pled and raised questions of fact and, therefore, denied Cablevision's motion to dismiss and for summary judgment with respect to *Noerr-Pennington*.[1]

## ARGUMENT

### I. Cablevision's Anti-SLAPP Claim Must Be Dismissed

Generally, a court will not grant a motion to dismiss "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" October Order at 5 (quoting *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957))). However, "'[a] complaint which consists of conclusory

---

[1] While upholding all of the claims in the Complaint, the Court found that Cablevision's anticompetitive conduct relating to its advertising misrepresentations was immunized from Sherman Act liability under *Noerr-Pennington* and dismissed the Jets' antitrust claim as to that particular conduct only.

2

allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).'" *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996).

This Court has ruled already that the Jets' claims are not frivolous, and Cablevision's conclusory allegations do not change that ruling. As this Court already has determined that the Jets' claims are not frivolous and <u>are entitled to proceed</u>, there is no basis in law or fact for Cablevision's anti-SLAPP claim. *See Friends of Rockland Shelter Animals, Inc. v. Mullen* ("*FORSA*"), 313 F. Supp. 2d 339, 345 (S.D.N.Y. 2004) (court finds basis to dismiss anti-SLAPP suit even though it granted defendant's motion to dismiss plaintiff's complaint). Consequently, under the law of the case, Cablevision's anti-SLAPP claim should be dismissed. *See Small v. Arch Capital Group, Ltd.*, 2005 U.S. Dist. LEXIS 23520, *5 (S.D.N.Y. Oct. 12, 2005) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1982)) (the "'law of the case' doctrine, [] provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case'").

Cablevision has pled in its anti-SLAPP Counterclaim the same arguments that this Court rejected in its October Order. In its motion to dismiss, Cablevision argued the "sham bid for the West Side Rail Yard" could not be the basis for a monopolization claim, Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs. Br.") at 17, and in the supplemental briefing argued that the bid was in fact not a sham. *See* Defendants' Memorandum in Response to The Court's July 27, 2005 Order ("Defs. Sup. Br.") at 13. This Court rejected Cablevision's argument, holding that on the basis of the limited evidence already submitted "there are triable issues of fact concerning the viability of Cablevision's bid" and that "if the Jets can establish [at trial] that Cablevision never intended to acquire the property, but submitted a bid only to impede the Jets' progress, [*Noerr-Pennington*] immunity will be unavailable." October Order at 15. In

3

spite of this clear ruling, Cablevision now claims that the Jets' allegation "that [Cablevision's] submission of proposals to the MTA to purchase the Development Rights . . . [was] a 'sham'" has "no substantial basis in fact or law and cannot be supported by any substantial argument for the extension, modification, or reversal of existing law." Answer & Amended Counterclaims ¶¶ 233, 237. This allegation lacks any basis in light of the Court's prior rulings.

The Jets' refusal to deal allegation illustrates how well grounded the Jets' claims are in the facts and the law. Cablevision has elected to disregard this Court's October Order which concluded that the Jets' refusal to deal allegations were proper as a matter of law. In moving to dismiss, Cablevision argued that its attempts to silence the Jets by refusing to run Jets advertisements could not be the basis for a monopolization claim because "as a matter of antitrust law, Cablevision has no legal duty to run the Jets' ads or otherwise to use its cable systems to assist the Jets in promoting their stadium project." Defs. Br. at 13. This Court once again rejected Cablevision's view of the law:

> While Cablevision is generally free to engage in business or refuse to engage in business with whomever it chooses, it may not do so when the purpose of such refusal is to maintain a monopoly. As alleged, defendants' 'refusal to deal' was predicated on an impermissible purpose, and thus if proven would subject Cablevision to antitrust liability.

October Order at 13.

Moreover, Cablevision does not deny as a factual matter that its refusal to carry the Jets' ads was part of its campaign to block the Jets' stadium. In fact, at oral argument, Cablevision's counsel admitted that the refusal to deal was part of that campaign. *See* Transcript of hearing before the Hon. Harold Baer, Jr. dated Sept. 27, 2005 ("Sept. Tr.") at 25 (Mr. Estrada: "[O]ur refusal to air their ads was refusing to use our conduits of communication to help their cause. It was part of our campaign to see that the stadium didn't get built."). Cablevision also admits that

4

it "declined to sell airtime to the Jets for advertisements advocating the stadium project, which Cablevision opposed." Answer and Amended Counterclaims ¶ 49. In spite of the legal and factual bases the Jets had to pursue these claims, Cablevision now alleges that the Jets' "claims have no substantial basis in fact or law and cannot be supported by any substantial argument for the extension, modification, or reversal of existing law." *Id.* ¶ 237. Given the record before the Court, it is very difficult to see how Cablevision could possibly make that allegation in good faith.

The court's decision in *FORSA* is instructive. In *FORSA*, the plaintiff brought an action alleging that the defendants had interfered with the Plaintiff's negotiations to lease property from the county and run an animal shelter on the leased property. *See FORSA*, 313 F. Supp. 2d at 341-42. After the County indicated they would support a pending resolution to award the lease to the plaintiff, the defendants sent a letter to the County Executive defending the existing animal shelter. *See id.* The County Legislature thereafter defeated the FORSA resolution and awarded the contract to the existing animal shelter. *See id.* at 342. The defendants asserted that their conduct was protected by the *Noerr-Pennington* doctrine. *See id.*

As in this case, in *FORSA* the defendants moved to dismiss the plaintiff's claims. *See id.* at 341. As in this case, the defendants also asserted an anti-SLAPP Counterclaim based on the plaintiffs' original claims and sought attorney's fees and damages under N.Y. Civ. Rights Law Section 70-a. *See id.* Unlike this case, however, in *FORSA,* the court dismissed the plaintiff's claims, *i.e.* the alleged SLAPP suit. *See id.* at 345. Even though the court dismissed the alleged SLAPP suit, the court also dismissed the defendants' anti-SLAPP Counterclaim because the court recognized that although the plaintiffs' original claims could not survive a motion to dismiss, nonetheless, they were not "frivolous" or "'without a substantial basis in fact or law.'" *Id.*

5

This Court similarly should dismiss Cablevision's anti-SLAPP Counterclaim. The case for dismissal here — where this Court has <u>denied</u> the defendants' motion to dismiss (and for summary judgment on) the alleged anti-SLAPP suit — is even more compelling than it was in *FORSA*, where the defendants' anti-SLAPP Counterclaim could not survive even where the court actually had <u>granted</u> dismissal of the alleged SLAPP suit.[2] *See id.* at 345; *see also In re West Branch Conserv. Assoc. v. Hi-Tor Realty, Inc.*, 222 A.D.2d 513, 515, 636 N.Y.S.2d 61, 63 (App. Div. 1995) (affirming lower court's decision to decline award of costs and attorneys' fees for anti-SLAPP Counterclaim after dismissing alleged SLAPP suit).[3]

## II. Cablevision Fails to State a Claim for Tortious Interference with Existing Contracts or for Tortious Interference with Prospective Business Relations <u>Concerning its Cable Subscribers</u>

Cablevision alleges for its second Amended Counterclaim that the Jets joined forces with DirecTV in "a telemarketing campaign targeted at Cablevision's cable subscribers in and around New York City." Answer and Amended Counterclaims ¶ 210. According to Cablevision, the purpose of each call was to discuss "the proposed Jets' stadium" and to criticize "Cablevision's opposition to the stadium project." *Id.* ¶ 216. These subscribers were allegedly then told "they

---

[2] In *FORSA*, the defendants moved for judgment on the pleadings, and the court found that the standard that applies "is identical to the standard applied when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Friends of Rockland Shelter Animals, Inc. v. Mullen ("FORSA")*, 313 F. Supp. 2d 339, 342 (S.D.N.Y. 2004).

[3] Moreover, an award of costs and fees under the anti-SLAPP statute is discretionary. Under New York's anti-SLAPP statute, a party <u>may</u> recover costs and attorney's fees only if it can demonstrate "that a frivolous claim has been interposed against a party in an action involving 'public petition and participation.'" *In re West Branch Conserv. Assoc. v. Hi-Tor Realty, Inc.*, 222 A.D.2d 513, 515, 636 N.Y.S.2d 61, 63 (App. Div. 1995) (citing N.Y. Civ. Rights Law § 70-a(1)(a)). Even if Cablevision's claims had any merit (which they do not), they would not be entitled to damages or fees because (as this Court has already concluded) the Jets have proceeded under cognizable legal theories with facts that support their claims. *FORSA*, 313 F. Supp. 2d at 344-45 ("[E]ven if FORSA's action is a SLAPP suit within the meaning of the statute, defendants are not entitled to damages. FORSA's suit was commenced under a cognizable legal theory and it presented facts that tended to show some of Mullen's statements were misleading"). Indeed, Cablevision—with its $4.9 billion in net revenues—simply is not the kind of defendant the anti-SLAPP statute was intended to protect. *See* NY CLS Civ. R. § 76-a (in which the Legislative History makes clear that the purpose of the anti-SLAPP statute is to prevent the threat of "personal damages and litigation costs that [could be] used as a means of harassing, intimidating or punishing individuals, unincorporated associations, not-for-profit corporations and others who have involved themselves in public affairs").

could avoid supporting Cablevision's opposition to the stadium project by dropping Cablevision as a cable provider and switching to DirecTV." *Id.* ¶ 218. Cablevision alleges that as a result of these calls "certain Cablevision subscribers switched from Cablevision to DirecTV" and "certain former Cablevision subscribers decided not to renew their subscriptions for Cablevision service." *Id.* ¶¶ 222, 224. These allegations are insufficient to state a claim for tortious interference as a matter of law.

### A. Cablevision Fails to Allege Tortious Interference With Existing Contracts

To state a claim for tortious interference with an existing contract, a plaintiff must allege "(a) that a valid contract exists; (b) that a third party had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Sedona Corp. v. Ladenburg Thalmann & Co.*, 2005 U.S. Dist. LEXIS 16382, *60 (S.D.N.Y. Aug. 9, 2005). A plaintiff therefore is required to allege the existence of an enforceable contract that has been interfered with and allege that the contract has been breached. *See id.* In other words, the contract must not be at will, where a "'party seeking to impose liability enjoys no legally enforceable right to performance'" and thus has no claim for tortious interference with an existing contract. *Chevron U.S.A., Inc. v. Roxen Service, Inc.*, 813 F.2d 26, 30 (2d Cir. 1987); *see also AIM Int'l Trading, L.L.C. v. Valcucine S.P.A.*, 2003 U.S. Dist. LEXIS 8594, *17 (S.D.N.Y. May 22, 2003) ("A contract terminable at will cannot be the basis for a tortious interference with contract claim").

Here, Cablevision's claim for tortious interference fails because it does not identify even one single enforceable contract breached by Cablevision's cable subscribers. Cablevision alleges only that it had "existing contracts to deliver cable services to the targeted customers." Answer and Amended Counterclaims ¶ 265. This allegation is insufficient because it does not identify

7

which contracts have been interfered with, whether these "contracts" were enforceable, and what specific terms were breached. *See Sedona*, 2005 U.S. Dist. LEXIS 16382 at *61-62 (dismissing interference claim because, among other things, it fails to adequately plead specific contracts"); *World Wide Communications, Inc. v. Rozar*, 1997 U.S. Dist. LEXIS 20596, *28 (S.D.N.Y. Dec. 30, 1997) (dismissing claim because "[c]ounterclaimants do not identify whether it is one contract or multiple contracts which were allegedly interfered with, the parties to the contracts, nor the specifics of the contracts"). Cablevision's claim for tortious interference with existing contracts with its cable subscribers should therefore be dismissed.

    **B.   Cablevision Fails to Allege Tortious Interference With Prospective Business Relations**

Similarly defective is Cablevision's claim for interference with prospective business relations with cable subscribers. The threshold for tortious interference with prospective business relations is greater than that involving interference with an existing contract. To state a claim for interference with prospective business relations under New York law, a plaintiff must allege that "(i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose, or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship." *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003).

As a result, "where there has been no breach of an existing contract, but only interference with prospective contract rights . . . the plaintiff must show more culpable conduct on the part of the defendant." *Sedona*, 2005 U.S. Dist. LEXIS 16382 at *62 (quoting *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group*, 87 N.Y.2d 614, 621, 664 N.E.2d 492, 496 (1996)). To state a claim a plaintiff must allege either that "(1) the defendant acted for the *sole* purpose of inflicting intentional harm on the plaintiff" or (2) "the defendants effected interference by 'wrongful

8

means.'" *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 345 F. Supp. 2d 360, 363 (S.D.N.Y. 2004). A defendant can act solely for the purpose of harming the plaintiff only if it is acting without regard to its own economic interest. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 191, 818 N.E.2d 1100, 1104 (2004) ("The existence of competition may often be relevant, since it provides an obvious motive for defendant's interference other than a desire to injure the plaintiff").

Concerning the definition of "wrongful means," the New York Court of Appeals recently explained that:

> The plaintiff must show that defendant's conduct was not "lawful" but "more culpable." The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other non-binding economic relations.

*Id.* at 190, 818 N.E.2d at 1103. While wrongful means may include "'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degree of economic pressure; they do not, however include persuasion alone although it is knowingly directed at interference with the contract.'" *Id.* at 191, 818 N.E.2d at 1104. (citation omitted). An allegation of economic pressure must therefore amount to "extreme and unfair" or "egregious wrongdoing." *Id.* at 192, 189, 818 N.E.2d at 1102-03, 1105.

Here, the allegation that the Jets tortiously interfered with Cablevision's prospective business relations with cable subscribers fails to set forth a claim. For one thing, Cablevision still fails to identify any specific prospective business relationship interfered with—it alleges only amorphously that it has lost "customers." This allegation provides no factual basis for assessing whether interference occurred and is therefore insufficient as a matter of law. *Sedona*, 2005 U.S. Dist. LEXIS 16382 at *63 (court dismisses tortious interference with business

9

relations claim, "[plaintiff] fails to identify which particular business relationships it claims were injured as a result of Defendants' alleged market fraud and manipulation"); *Moscato v. TIE Techs., Inc.*, 2005 U.S. Dist. LEXIS 867, *16 (S.D.N.Y. Jan. 21, 2005) (claim dismissed because "[p]laintiff . . . does not identify any purchasers nor any relationships with any purchasers"); *Henneberry v. Sumitomo Corp. of Am.*, 2005 U.S. Dist. LEXIS 7475, *72-73 (S.D.N.Y. Apr. 27, 2005) ("A properly pleaded complaint for this tort must allege relationships with specific third parties with which the respondent interfered"); *Highland Capital Mgmt., L.P. v. Schneider*, 2005 U.S. Dist. LEXIS 14912, *73 (S.D.N.Y. July 26, 2005) (the tort of interference with prospective advantage "must be supported by evidence of plaintiff's relationships with specific third parties with which defendants interfered").

Even if Cablevision identified the specific business relationships interfered with, it does not (and cannot) allege that the Jets acted solely for the purpose of inflicting intentional harm on Cablevision. *See I.S. Sahni, Inc. v. Scirocco Fin. Group, Inc.*, 2005 U.S. Dist. LEXIS 21876, *15-16 (S.D.N.Y. Sept. 28, 2005) (noting that the third element of the tort requires that "the defendant acted with the sole purpose of harming the plaintiff *or* used dishonest, unfair, or improper means") (emphasis added). The Jets could not have been acting for the sole purpose of harming Cablevision because Cablevision's Amended Counterclaims clearly state that the Jets funded the phone calls to communicate their position on the proposed Jets stadium. *See* Answer and Amended Counterclaims ¶¶ 210, 216. The Jets were thus plainly acting to advance their own economic interest in attempting to build the West Side Stadium, and therefore could not be acting "solely" to injure Cablevision.

Moreover, Cablevision does not adequately plead that the Jets engaged in any "wrongful" means. Cablevision merely makes the conclusory allegation that "[u]pon information and belief,

10

during these calls, the telemarketers retained by DirecTV and the Jets made false statements about the proposed Jets' stadium and about Cablevision's opposition to the stadium project" and that the Jets used "dishonest, unfair and improper means." Answer and Amended Counterclaims ¶¶ 217, 269. *Lewittes v. Cohen*, 2004 U.S. Dist. LEXIS 9467, *2 (S.D.N.Y. May 26, 2004) ("'Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss'") (internal citation omitted). These allegations are patently insufficient to plead wrongful means because they are conclusory and do not satisfy the standard as laid out by the New York Court of Appeals. *See supra* at 9 (discussing the definition of "wrongful means"); *see also Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 499 (S.D.N.Y. 2002) (dismissing claims for interference with existing contracts and prospective relations based on allegation of fraudulent misrepresentation because plaintiff failed to allege "who made the allegedly false statements, the contents of such statements, and to whom such statements were made"); *Kirch v. Liberty Media Corp.*, 2004 U.S. Dist. LEXIS 19228, *37 (S.D.N.Y. Sept. 27, 2004) (plaintiff's negative statements about defendants did not constitute wrongful means because "even if economic pressure suffered by [plaintiff] were cognizable under New York law, to the extent that [defendant's] statements caused such pressure, they did so merely as a result of their persuasive effect on third parties who, in the end, independently decided not to enter into various subsequent agreements with [plaintiff]"). Cablevision's claim for interference with prospective business relationships with its cable subscribers therefore should be dismissed.

### III. Cablevision Fails to State a Claim for Tortious Interference with Existing Contracts or for Tortious Interference with Prospective Business Relations Concerning Construction Contractors

Cablevision alleges in its third Amended Counterclaim that the Jets tortiously interfered with existing contracts and prospective business relations with several design and construction

11

professionals. Cablevision identifies three: (1) Flack + Kurtz Inc., characterized by Cablevision as a "mechanical, electrical, and plumbing design and consulting firm." Answer and Amended Counterclaims ¶ 153; (2) Turner Construction Co., characterized by Cablevision as a "design and construction professional[]," *id.* ¶ 175; and (3) Code Consultants, Inc., characterized by Cablevision as "a consulting firm specializing in fire safety and regulatory code compliance issues," *id.* ¶ 200. Cablevision alleges the Jets told these companies they would not be permitted the opportunity to work on the "Jets Stadium" if they were also working on "the Garden renovation" and that as a result, these companies chose to discontinue their relationship with Cablevision. *See generally*, *id.* ¶ 281-82. These allegations cannot possibly state a claim.

A. **Cablevision Fails to Allege Tortious Interference With Existing Contracts**

Cablevision's allegation that the Jets interfered with existing contracts with these "design and construction professionals" fails as a matter of law. Specifically, Cablevision has failed to identify any enforceable contract that has been breached. Indeed, Cablevision carefully avoids doing so and instead claims only that Flack + Kurtz "refused to work on the Garden renovation project," *id.* ¶ 170, that Turner "terminated its relationship with MSG and refused to work on the Garden renovation," *id.* ¶ 193, and that Code "refused to work on the Garden renovation and terminated its relationship with MSG," *id.* ¶ 203. These allegations are insufficient because they do not identify any enforceable contracts that have been interfered with. *See, e.g., World Wide*, 1997 U.S. Dist. LEXIS 20596 at *27-28 ("The primary flaw in these pleadings is the lack of any factual allegations as to the underlying contracts).

### B.  Cablevision Fails to Allege Tortious Interference With Prospective Business Relations

Cablevision's claim that the Jets interfered with prospective business relations with these companies likewise fails. Even if Cablevision could allege the other elements of this claim (and it does not), it cannot allege that the Jets acted for a wrongful purpose, or used dishonest, unfair, or improper means. The Jets were pursuing their own economic interest in seeing to it that critical vendors would not have a conflict of interest by working with the Jets to develop the stadium project while at the same time working for Cablevision—a company openly attempting to block the Jets from going forward with the very stadium project those vendors would work on for the Jets. Under these circumstances, the Jets could not have been acting "solely" to injure Cablevision.[4]

Moreover, Cablevision does not allege how the Jets have engaged in wrongful means in interfering with these relationships other than the conclusory allegation the Jets "used dishonest, unfair, and improper means to interfere with MSG's business relations and prospective business relations with these professionals." Answer and Amended Counterclaims ¶ 281. This allegation is insufficient to defeat a motion to dismiss. *See Lewittes*, 2004 U.S. Dist. LEXIS 9467, at *2 ("'Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss'"). To the extent Cablevision suggests that asking these prominent, successful companies to choose between working with the Jets in order to develop their competing stadium project and working with Cablevision amounts to wrongful means as "extreme and unfair" or "egregious" economic pressure, that contention is absurd. *Carvel Corp.*, 3 N.Y.3d 182 at 189-92, 818 N.E.2d at 1102-04. Thus, Cablevision's claim based on

---

[4] Of course, the Jets were also pursuing their own economic interest in seeking the services of these entities because, as Cablevision explains, all of them were extremely qualified service providers in the field of facilities design and construction—services the Jets irrefutably needed to build a competing stadium.

13

interference with prospective business relations with these design and construction firms should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Jets respectfully request that the Court dismiss Cablevision's Amended Counterclaims.

Dated: New York, New York
December 22, 2005

David Boies (DB-4399)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
914-749-8200

Robert J. Dwyer (RD-9629)
Paul R. Verkuil (PV-5978)
Alanna C. Rutherford (AR-0497)
BOIES, SCHILLER & FLEXNER LLP
570 Lexington Avenue
New York, New York 10022
212-446-2300

*Of Counsel*:
Jonathan D. Schiller
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, DC 20015
202-237-2727

Marc E. Kasowitz (MK-2597)
Daniel R. Benson (DB-6587)
Daniel J. Fetterman (DF-9093)
KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
212-506-1700