Exhibit 3

Dockets.Justia.com



At an I.A.S. Term, Part 34, of the Supreme
Court of the State of New York,
held in and for the County of
Suffolk, at the County Courthouse
in *Central Islip*New York, on the
day of **SEP 0 5 2001**

PRESENT:   Hon.  W. Bromley Hall,  Justice.

------------------------------------------------------------------------

T.S. HAULERS, INC.,
                              Plaintiff,              ORDER SETTLING
        -against-                                     ORDER AND
                                                      DIRECTING ENTRY
EVE KAPLAN, JOAN GRIFFIN, NORTH FORK
ENVIRONMENTAL COUNCIL INC., and                       Index No. 01-7313
CALVERTON CIVIC ASSOCIATION,

                              Defendants.

------------------------------------------------------------------------

Defendants  herein, having moved this Court for summary  judgment pursuant to

CPLR  3212 dismissing plaintiff's complaint and granting defendants' motion for summary

judgment on their counterclaim on the grounds that plaintiff's defamation suit against

defendants was a SLAPP suit which was commenced by plaintiff to inhibit defendants from

public participation in a matter of great public concern which is in violation of Civil Rights

Law 76-a and 70-a, and violated defendants' Constitutional, statutory and Civil Rights.

    This proceeding  having come on to be heard at IAS Part 34 of the Supreme Court

Suffolk County, before Justice W. Bromley Hall, and after due deliberation having been had

thereon and a memorandum decision of this Court having been made therein, dated July 16,

2001,  filed with the Suffolk County Clerk, on July 31, 2001, granting the defendant's

summary judgment motion dismissing plaintiff's complaint and granting the defendant's

summary judgment motion on the counterclaim to the extent of costs and attorneys fees and

directing the parties to complete discovery on the issues of "compensatory damages" and

"punitive damages" within 90 days and directing that they schedule a compliance conference

thereafter, and settle the order as hereinafter provided; it is

ORDERED, ADJUDGED AND DECREED, that the defendants' summary judgment

motion dismissing plaintiff's complaint is hereby granted; and it is further

ORDERED, ADJUDGED AND DECREED, that the defendants' summary judgment

motion on the counterclaim to the extent of costs and attorney's fees is hereby granted; and

it is further

ORDERED, ADJUDGED AND DECREED, that the parties are directed to complete

discovery on the issues of "compensatory damages" and "punitive damages", within 90 days

of the date of the memorandum decision and to schedule a compliance conference therafter.

ENTER.

HON.
Justice of the Superme Court        SEP 0 5 2001

EY HALL

GRANTED
SEP 05 2001
EDWARD P. ROMAINE
Clerk of Suffolk County

FILED

COPY

MEMORANDUM

2001 JUL 31 PH 3:47

EDWARD ___ ___
CLERK OF
SUFFOLK COUNTY

SUPREME COURT, SUFFOLK COUNTY

Sur-Haulers, Inc.,

                         Plaintiff,

                   -against-

Eve Kaplan, et. al.,
                         Defendants.

IAS TERM
PART 34

BY:   W. BROMLEY HALL, J.S.C.

DATED:  ___ ___ ___

MOTION DATE:July 17, 2001
SEQ. NO.:001
RETURN DATE:July 17, 2001
MNEMONICS:MG
INDEX No.:7313/01

PLTF'S/PET'S ATTORNEY:
Scheyer & Jellenik
227 Middle Country Road
Smithtown, N.Y. 11787

DEF'S/RESP'S ATTORNEY:
Regina Seltzer
30 S. Brewster Lane
Bellport, N.Y. 11713

     In this defamation action, defendants have moved for summary judgment
dismissing the complaint and for summary judgment on their counterclaim.
     Plaintiff purchased property in the Town of Riverhead and conducted a
sand and gravel mining operation on the property.  An application to the
Riverhead Town Board resulted in a denial of permit on October 7, 1997.
After further proceedings, plaintiff again applied to the Town to obtain a
special permit to continue its sand mining operations.  On November 3,
2000, the Riverhead Planning Board reviewed plaintiff's application and
recommended that the Town Board deny the application.  On November 21, 2000
the Town Board discussed plaintiff's application but rescheduled the
hearing for February 6, 2001.
     Defendant, Calverton Civic Association, is a not-for-profit group
located in Calverton, Town of Riverhead, whose purpose is to keep its
membership advised of matters that affect the quality of life in the area.
It appears that plaintiff is a member of this association.  Defendant, Joan
Griffin, is the current president of Calaverton Civic Association.
Defendant, North Fork Environmental Council, Inc.(NFEC) is a not-for-profit
organization who purpose is to the protect the environment of the North
Fork of Long island.  Defendant, Eve Kaplan, is an employee of NFEC and is
responsible for the coordination and communication with local civic groups
and public actions.
     On February 2, 2001, defendants, wishing to inform their members and
the public of the hearing on plaintiff's application, sent to the local

newspapers a statement related to plaintiff's application which included
the following:
"...ground water has been hit in...mining pits.  Ground-up
construction debris which may contain heavy metals and toxics is being
stored on site and may be used eventually as backfill for the pits, posing
the serious possibility of groundwater contamination."
"...T.S. Haulers has not been forced to slow down or stop its illegal and
damaging activities."
"The company is well connected politically in Suffolk County and sponsors
the race car team of Rivherhead Councilman Ed Densieski..."
    Plaintiff commenced this action claiming that the aforementioned
statements were false and defamatory.  Plaintiff claims that they never
struck groundwater in any mining pits.  Moreover, an inspection by the DEC
confirmed that fact and the fact that there was no construction material or
debris located on the property as well as no heavy metal or toxic material
being stored.  Plaintiff notes that at one time it did sponsor the race
team of Ted Densieski, councilman Densieski's brother, but withdrew after
Densieski's election.  Plaintiff alleges that the statements caused a
downturn in business contemporaneous with the publication of the false
statements.  Defendants answered and counterclaimed based upon New York
State Civil Rights law which prohibits strategic lawsuits against public
participation, commonly known as SLAPP suits.[1]
    The New York State Legislature enacted special procedural and
substantive safeguards to protect the exercise of free speech involving
public issues.  Chapter 767 of the Laws of 1992 establishes legislative
intent to insure a Jefferson democracy[2] by protecting those issues closest
to home, such as land use issues.  The legislature declared "'... it to be
the policy of the state that the rights of citizens to participate freely
in the public process must be safeguarded with great diligence'" and that
"'[t]he laws of the state must provide the utmost protection for the free
exercise of speech, petition and association rights, particularly
where such rights are exercised in a public forum with respect
to issues of public concern.'" L. 1992, ch. 767, §1[Citizens Particpation
Act].  SLAPP actions are "an attempt to 'privatize' public debate – a

---

[1]  It appears that at least 17 states have similar statutes,
some calling them "anti-SLAPP" laws.  Strategic lawsuits Against
Public Participation and Petition Clause Immunity, 31 ELR 10852.
The use of the acronym may be traced to the  Penelope Canan &
George W. Pring, Strategic Lawsuits Against Public Participation,
35 Soc. Probs. 506 (1988).

[2]  "Unchecked, SLAPPs raise real concern for the future of
"citizen involvement" or "public participation" in government,
long viewed as essential in our representative democracy." G. G.
Pring & P. Canan, Strategic Lawsuits Against
Public Participation" ("SLAPPs"): An Introduction for
Bench, Bar and Bystanders, 12 U.Bridgeport L.Rev. 937, 944(1992).
"Debate on public issues is distorted when one side is afraid to
speak, or when one side is able to shift the efforts of its
opponents away from public issues toward private self-defense.
The entire character of public discourse is polluted when
intimidation becomes a common or acceptable tactic.  J. Braun,
Increasing SLAPP Protection: Unburdening the Right of Petition in
California, 32 U.C. Davis L. Rev. 965, 970(1999).

unilateral effort by one side to transform a public, political dispute into a private, legal adjudication, shifting both forum and issues to the disadvantage of the other side. Thus, citizens may involve themselves in a city hall zoning dispute, only to find that 'city hall' has become 'courtroom,' and 'zoning' has become 'defamation' or 'interference with business.'" G. Pring & P. Canan, Strategic Lawsuits Against Public Participation" ("SLAPPs"): An Introduction for Bench, Bar and Bystanders, 12 U.Bridgeport L.Rev. 937, 941 (1992).

The initial issue is whether the action is covered by the protection. First there must be an action involving public petition and participation which is an action by a public applicant or permittee and is materially related to any efforts to report on, comment on, rule on, challenge or oppose such application or permission. Civil Rights Law 76-a(a). It is clear that plaintiff is a public applicant or permittee since it was seeking a special permit from the Town Board of Riverhead. Civil Rights Law 76-a(b).[3] It is equally as clear that the communication related to the opposition to the application by two not-for-profit civic organizations whose area of concern encompasses plaintiff's application. Consequently, this action is a classic SLAPP action.[4]

Based upon such determination, the special protections are applicable. At this juncture, two sections intertwine. First, under section 76-a of the Civil Rights Law, plaintiff must establish, in addition to all other necessary elements, by clear and convincing evidence that the communication was made with knowledge of its falsity or with reckless disregard of whether it was false. Civil Rights Law 76-a(2). Second, under CPLR 3212(h), the motion for summary judgment in SLAPP actions must be granted unless the plaintiff demonstrates that the action has a substantial basis in fact and law or is supported by a substantial argument for an extension, modification or reversal of existing law. In other words, in order to defeat the motion the plaintiff must do more than raise an issue of fact. Plaintiff must provide strong evidence that a trier of fact could determine that there exists a high degree of probability that the defendant knew the statements were false or were made with reckless disregard of such statements being false. Cf. New York Times Co. v. Sullivan, 376 U.S. 254. This high standard of review is a legislative determination to protect public discussion which would be chilled by long litigation and its costs. These provisions are "designed to deter such SLAPP suits...by tightening up

---

[3]. "An application to change land-use regulations is just one example of seeking a governmentally bestowed privilege for which public comment is traditionally invited." M. Stetson, Reforming SLAPP Reform: New York Anti-SLAPP Statute, 70 N.Y.U. L. Rev. 1324(1995).

[4]. Although plaintiff does not raise the issue, the fact that the statements were made to the media and to its members to have them present at the hearing and were not made at the hearing itself does not change the analysis. The sections should be broadly constructed to achieve the legislative goal of full discussion. Adelphi University v. Committee to Save Adelphi, N.Y.L.J. Feb. 6, 1997, at 33, col. 4. California amended its anti-SLAPP statute in 1997 to clearly articulate that it should be broadly construed. Cal. Civ. Proc. Code §425.16(a) (West Supp. 1997) (adding a final sentence: "To this end, this section shall be construed broadly").

the legal requirements for them and by making it easier for the opposer to get them dismissed." D.Siegel, Practice Commentaries, McKinney's Consol Laws of NY, Book 7B, CPLR 3211, supp. P. 26.

Applying the standard to the evidence submitted, it is clear that plaintiff failed to carry its burden. In fact, the only proof submitted is that the information was in the public domain which may have corrected the statements by defendants. Plaintiff concedes that defendants utilized an article by the wife of one of the Town Councilpersons for the information in its media communication. Plaintiff's conclusory statement that defendant should have known that the article was more of an editorial does not alter the determination that the record is devoid of evidence and that defendants knew the statements were false or acted with reckless disregard. Consequently, summary judgment must be granted dismissing the complaint.

A fortiori, summary judgment must be granted on the counterclaim to the extent of costs and attorney's fees. The evidence, as noted above, establishes that plaintiff commenced the action without substantial basis in fact. Civil Rights Law 70-a(1)(a).[5] At this juncture the defendants are seeking "other compensatory damages" and "pu damages" under the Civil Rights Law. §70-a(1)(b);(c). The evidence does establish, as a matter of law, the required proof to grant summary judgment for such damages. In light of the legislative directive to construe

---

[5]. A review of the evidence fails to establish that the words were defamatory or that plaintiff suffered any special damages. The second and most of the third statements are non-actionable opinion. Immuno AG. v. Moor-Jankowski, 77 N.Y.2d 254, cert. denied, 500 U.S. 954. The remaining part of the third statement, that plaintiff was a sponsor of a race-car, which comes from a newspaper article, has not been established to be false or just an error in time or name. As for the first statement, there is no evidence that it is false except for plaintiff's own statement, nor is there any evidence of damages due to such statement. Rall v. Hellman, - A.D.2d -, 2001 WL 624847; cf. Boyle v. Stiefel Lab., 204 A.D.2d 872, app. denied, 84 N.Y.2d 803.

At least one commentary has raised the issue that corporations should be deemed public figures for defamation actions. Note, The Corporate Defamation Plaintiff In The Era Of SLAPPS: Revisiting New York Times v. Sullivan, 9 Wm. & Mary Bill Rts. J. 491. They further opine that a "per se public figure status for the corporate plaintiff properly balances the interests of reputation and speech. Corporations may protect their reputations in cases where they can show actual malice (knowledge or reckless disregard of the falsity of the defamatory statements). At the same time, citizen activists are able to participate under a lowered threat of SLAPP suits. Creating a higher standard for corporate plaintiffs, a per se status means that fewer SLAPPs will succeed at trial. A lowered likelihood of success means that more SLAPPs will be dismissed at the pleading stage, undermining the threat of protracted legal expenses. Furthermore, a per se standard allows more opportunity to levy sanctions against corporations for filing frivolous suits. Most important, a per se rule creates a predictable level of protection for citizen activists, thus providing the necessary breathing space for healthy public debate." Id. at 529.

_____ the parties are directed to complete discovery on these issues within 90 days and schedule a compliance conference thereafter.

Settle order.

_____
W. BROMLEY HALL   J. S. C.