UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
NEW YORK JETS LLC and :
JETS DEVELOPMENT LLC, :
:
                Plaintiffs, :
:
     v. :     05 Civ. 2875 (HB)
:     (ECF)
CABLEVISION SYSTEMS CORPORATION, :
CSC HOLDINGS, INC., and :
MADISON SQUARE GARDEN LP, :
:
                Defendants. :
:
------------------------------------------------------------X


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

David Boies (DB-4399)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Robert J. Dwyer (RD-6457)
Paul R. Verkuil (PV-5978)
Alanna C. Rutherford (AR-0497)
BOIES, SCHILLER & FLEXNER LLP
570 Lexington Avenue
New York, New York 10022

*Of Counsel*:
Jonathan D. Schiller
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, District of Columbia 20015

Marc E. Kasowitz (MK-2597)
Daniel R. Benson (DB-6587)
Daniel J. Fetterman (DF-9093)
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
1633 Broadway
New York, New York  10019

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

I.     CABLEVISION'S ANTI-SLAPP COUNTERCLAIM SHOULD BE DISMISSED..........2

II.    CABLEVISION FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL OR PROSPECTIVE BUSINESS RELATIONS ........................4

      A.    Cablevision Does Not Allege the Existence of an Enforceable Contract That Has Been Breached..................................................................................................4

      B.    Cablevision Fails to Allege Tortious Interference With Prospective Business Relations ....................................................................................................7

           1.   Cablevision's Counterclaims Demonstrate That the Jets Could Not Have Acted Solely to Harm Cablevision ..................................................................7

           2.   Cablevision Does Not Allege Wrongful Means ................................................9

CONCLUSION ............................................................................................................................10

## TABLE OF AUTHORITIES

                                                      **Page**

**Cases**

Bell v. Little,
250 A.D.2d 485, 673 N.Y.S.2d 402 (App. Div. 1998)..................................................4

Carvel Corp. v. Noonan,
818 N.E.2d 1100, 3 N.Y.3d 182 (2004) ......................................................................10

Clemente v. Impastato,
290 A.D.2d 864, 736 N.Y.S.2d 281 (App. Div. 2002)..................................................3

Drug Emporium, Inc. v. Blue Cross of W. N.Y., Inc.,
104 F. Supp. 2d 184 (W.D.N.Y. 2000).......................................................................10

Friends of Rockland Shelter Animals, Inc. v. Mullen ("FORSA"),
313 F. Supp. 2d 339 (S.D.N.Y. 2004) .........................................................................3

Guerrero v. Carva,
10 A.D.3d 105, 779 N.Y.S.2d 12 (App. Div. 2004).....................................................3

I.S. Sahni, Inc. v. Scirocco Fin. Group, Inc.,
No. 04 Civ. 9251, 2005 U.S. Dist. LEXIS 21876 (S.D.N.Y. Sept. 28, 2005)..............8

Sedona Corp. v. Ladenburg Thalmann & Co.,
No. 03 Civ. 3120, 2005 U.S. Dist. LEXIS 16382 (S.D.N.Y. Aug. 9, 2005) ............ 4-5

Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.,
No. 97 Civ. 5499, 2000 U.S. Dist. LEXIS 2604 (S.D.N.Y. Mar. 9, 2000) ..................7

Tasso v. Platinum Guild Int'l,
No. 94 Civ. 8288, 1997 U.S. Dist. LEXIS 252 (S.D.N.Y. Jan. 16, 1997)..................10

Wolff v. Rare Medium, Inc.,
210 F. Supp. 2d 490 (S.D.N.Y. 2002).....................................................................9-10

World Wide Comm'ns, Inc. v. Rozar,
No. 96 Civ. 1056, 1997 U.S. Dist. LEXIS 20596 (S.D.N.Y. Dec. 30, 1997) ..............5

**Statutes**

N.Y. Civ. Rights Law §76-a(1) (2005)............................................................................2-3

1992 N.Y. Laws 767............................................................................................................4

Plaintiffs New York Jets LLC and Jets Development LLC (collectively, "the Jets" or "Plaintiffs") respectfully submit this reply memorandum of law in further support of their motion to dismiss Defendants' Amended Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Defendants-Counterclaim Plaintiffs Cablevision Systems Corporation, CSC Holdings, Inc., and Madison Square Garden, L.P. (collectively, "Cablevision" or "Defendants") argue that it is premature to dismiss their anti-SLAPP counterclaim. For the reasons set forth herein, Cablevision is wrong. First, this Court already decided that the Jets' monopolization claim is well-pled and that, as a matter of law, Cablevision's refusal-to-deal conduct did not involve public petitioning. Therefore, the Jets' antitrust claim cannot be covered by the anti-SLAPP statute. Second, this Court already found that the Jets have put forth a well-pled complaint as to which the Court sustained all claims and denied summary judgment on defendants' *Noerr-Pennington* defense. Finally, Cablevision -- a media giant with nearly $5 billion in annual revenues -- is not the kind of litigant that the anti-SLAPP law was designed to protect and suffered no chill on its conduct as a result of this lawsuit.

Cablevision's tortious interference with contractual and prospective business relations counterclaims also are defective as a matter of law and should be dismissed. Cablevision does not and cannot account for the fact that it has failed to allege the existence of even one enforceable contract with any cable customer or construction firm that was breached as a result of alleged tortious interference by the Jets. Cablevision similarly fails to account for its own allegations that demonstrate that the Jets' alleged tortious interference with Cablevision's prospective relations was neither intended solely to harm Cablevision nor carried out by the Jets

using wrongful means. No matter how liberal notice pleading is under the federal rules, at the end of the day, a plaintiff still must state a claim. Cablevision does not.

## ARGUMENT

### I. CABLEVISION'S ANTI-SLAPP COUNTERCLAIM SHOULD BE DISMISSED

Monopolization is at the heart of this lawsuit, and this Court's October 17, 2005 Opinion and Order (the "October Order") makes clear the Jets' claims are well-founded and not frivolous. Cablevision, however, casts aside this Court's ruling and the admitted fact that it engaged in a multimillion-dollar campaign to block the Jets' stadium and now asks the Court to nevertheless permit it to proceed with an anti-SLAPP counterclaim because the Jets' claims purportedly challenged and chilled Cablevision's public petitioning conduct. This argument is meritless.

First, the Court already has decided as a matter of law that the Jets' monopolization claim is supported by conduct that does not involve petitioning. (*See* October Order at 12 n.1 ("[a] refusal to engage in business with a competitor, i.e., a refusal to sell a competitor advertising time, is too attenuated to constitute an attempt to secure governmental action, even when those advertisements involve an issue of public concern").) Consequently, the monopolization *claim* does not qualify as a SLAPP claim because, as this Court has found, Cablevision's refusal-to-deal conduct is not petitioning conduct. The anti-SLAPP statute requires a claim to be materially related[1] to the anti-SLAPP plaintiff's petitioning conduct to qualify for protection. *See* N.Y. Civ. Rights Law § 76-a(1) (2005) ("'action involving public petition and participation' is an action, claim, cross claim or counterclaim for damages that is brought by a public applicant or permittee, and is *materially related to* any efforts of the defendant to report on, comment on, rule on,

---

[1] SLAPP suits overwhelmingly are libel or defamation cases and not complex antitrust cases like the present one.

challenge or oppose such application or permission") (emphasis added).[2] Cablevision cannot convert the monopolization claim into a SLAPP claim where, as here, the claim has been sustained -- as a matter of law -- based on non-petitioning conduct.[3]

Second, if the Court were to apply the anti-SLAPP standard -- which it should not -- Cablevision argues, without authority, that the Jets' motion is premature unless the Jets can substantiate "all issues of fact and law" underlying their antitrust claim. (Opp'n at 7-8.) That is not the law. *See e.g., Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339 (S.D.N.Y. 2004) ("*FORSA*") (dismissing anti-SLAPP claim even though granting defendants' motion to dismiss on *Noerr-Pennington* grounds). In *FORSA*, the Court granted a motion to dismiss an anti-SLAPP claim involving complex *Noerr-Pennington* issues, where discovery had not occurred. *Id.* Indeed, the court in *FORSA* noted that "the sheer magnitude of this [25-page] Memorandum of Law indicates that FORSA's suit was not wholly without merit." *Id.* at 345 n.3. Surely, after Cablevision has filed 50 pages of briefing, attached more than one hundred pages of exhibits, and had two oral arguments before the Court, the same should be said about the Jets' claim. Given this Court's careful consideration of the Jets' claims after extensive briefing and discovery, this Court is certainly in a position to determine -- as Judge Conner did in *FORSA* -- that the Jets' claims are not frivolous.

---

[2] *See also Guerrero v. Carva*, 10 A.D.3d 105, 779 N.Y.S.2d 12 (App. Div. 2004) (anti-SLAPP statute must be construed narrowly, and challenged communication must be substantially related to petitioning); *Clemente v. Impastato*, 290 A.D.2d 864, 736 N.Y.S.2d 281 (App. Div. 2002) (dismissing anti-SLAPP claim because challenged conduct not within scope of government function and therefore not related to anti-SLAPP plaintiff's petitioning conduct).

[3] Cablevision disingenuously argues that "this Court has already determined that at least one of the Jets' claims lacked any basis in law." (Mem. of Law in Opp'n to Pls.' Mot. to Dismiss Defs.' Am. Countercls. (hereinafter "Opp'n") at 7.) This argument misrepresents the Jets' Complaint and the Court's October Order. In the October Order, the Court merely held that Cablevision's public misrepresentations about the Jets' stadium project were immunized from Sherman Act liability under *Noerr-Pennington*. However, the Court denied Cablevision's motion to dismiss the monopolization claim, finding instead that the *claim* was well pled on other grounds and, as a matter of law, did not involve petitioning conduct with respect to the refusal-to-deal allegations.

Finally, it defies logic to think that a massive media and entertainment company such as Cablevision, with nearly $5 billion in annual revenues and an army of lawyers and consultants, could be in the class of individuals, unincorporated associations, and not-for profit organizations that the legislature intended to protect from "the threat of personal damages and litigation costs." 1992 N.Y. Laws 767. The anti-SLAPP statute was intended to prevent well-financed corporations and developers from using litigation to intimidate and punish concerned citizens and remedy the dangers posed to those who might be deterred by the "threat of personal damages and litigation costs." *Id.* Here, the risk that Cablevision would be intimidated is non-existent. Indeed, the record makes clear that Cablevision has been undaunted and has suffered no such chilling effect. *See, e.g., Bell v. Little*, 250 A.D.2d 485, 673 N.Y.S.2d 402 (App. Div. 1998) (affirming lower court ruling that plaintiff's suit did not offend the anti-SLAPP statute where suit did not affect defendant's right of public petition and participation). Consequently, the policies of the anti-SLAPP statute are not served by allowing Cablevision to proceed with its anti-SLAPP counterclaim.

## II. CABLEVISION FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL OR PROSPECTIVE BUSINESS RELATIONS

Cablevision's tortious interference with contractual and prospective business relations counterclaims are likewise flawed and should be dismissed.

### A. Cablevision Does Not Allege the Existence of an Enforceable Contract That Has Been Breached

As the Jets noted in their opening memorandum, to state a claim for tortious interference with an existing contract, a plaintiff must at least allege "(a) that a valid contract exists; (b) that a third party had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff."

*Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120, 2005 U.S. Dist. LEXIS 16382, at *60-61 (S.D.N.Y. Aug. 9, 2005). As a result, the cases uniformly have held that a plaintiff must allege the existence of a specific enforceable contract that was breached as a result of tortious interference in order to state a claim. *See id.*; *World Wide Comm'ns v. Rozar*, No. 96 Civ. 1056, 1997 U.S. Dist. LEXIS 20596, at *27-28 (S.D.N.Y. Dec. 30, 1997).

Cablevision cannot escape the weight of these authorities[4] and the basic obligation to allege the existence of a specific contract that was interfered with and breached as a result. That, however, is precisely what Cablevision attempts in its opposition papers. With respect to cable customers, Cablevision concedes it has not identified even one customer who, as a result of tortious interference by the Jets, breached an enforceable contract with Cablevision. Instead, Cablevision makes the incredible assertion that it still states a claim and should be permitted to proceed because the existence of enforceable contracts *between Cablevision and its cable customers* that were breached as a result of interference is an essential fact that might exist but is "exclusively within the [Jets'] knowledge or control." (Opp'n at 13.) Cablevision's contention is unfounded.

Indeed, it is the essence of a claim for interference with contract that a plaintiff be a party to an enforceable contract with a third party that was breached as a result of interference. So it is simply unbelievable for Cablevision to claim this information is exclusively in the Jets' control and Cablevision has "no way of ascertaining the identities of specific subscribers" that breached enforceable contracts with it as a result of the Jets' conduct. (Opp'n at 13.) Just to conduct its

---

[4] Without offering a single case to the contrary, Cablevision tries to distinguish the clear line of authority showing that Cablevision was required to allege the existence of a specific contract that was breached. (Opp'n at 12-13, n.7.) Cablevision (without success) mostly distinguished the cases the Jets cited with respect to tortious interference with prospective business relations and not interference with existing contracts. In any event, the cases cited by the Jets (and the legion of cases fully consistent with these authorities) concerning the pleading requirements for tortious interference with existing contracts and prospective business relations speak for themselves, and the complete absence of contrary authority by Cablevision makes obvious that Cablevision cannot escape its pleading burdens.

business, Cablevision must necessarily know (1) who its cable customers are; (2) what the terms and conditions of the contracts with its customers require;[5] and (3) under what circumstances any of its customers breached their contract. Whether Cablevision had an enforceable contract with a customer that was breached is, thus, a fact *wholly within Cablevision's knowledge and control.* Cablevision's failure to allege or identify even one such contract is stunning.[6]

Cablevision's claim for tortious interference with existing contracts with respect to the construction firms it identified in the counterclaims is equally without merit. As the Jets already have pointed out, Cablevision did not make any allegation in its counterclaims that it had an enforceable contract that was breached by any of these firms as a result of the Jets' interference. In its opposition, Cablevision effectively concedes its failure to allege a claim for interference with contracts with these companies, relegating its entire response on this point to a single footnote in which Cablevision says only that "[a]lthough the Jets argue that Cablevision fails to allege the existence of any contracts with these firms, Cablevision does, in fact, expressly allege that it *has had* longstanding, ongoing contractual relationships with each of them." (Opp'n at 17 n.12 (emphasis added).) That Cablevision *has had* at some time in the past a contract with these firms has nothing to do with the allegation it was required, and yet failed, to make: the existence of an enforceable contract that was breached by one of these companies as a result of

---

[5] Cablevision faults (without disputing) the Jets for "speculating" that Cablevision's contracts with cable subscribers were at will and therefore could not be tortiously interfered with, but that is precisely the problem with Cablevision's pleading -- it fails ever to identify a specific customer contract, including who the parties are, what the terms of the contract are, and how the contract was breached. Under these circumstances, all the Jets were left to do was surmise what a cable customer contract would have been had Cablevision bothered to plead one.

[6] Not surprisingly, Cablevision offers no authority for the proposition that its failure to allege the existence of an enforceable contract with a third party that has been breached as a result of wrongful interference can be excused because it is a fact that may exist but is within the "exclusive" control of a defendant. Instead, Cablevision cites to a wholly inapposite summary judgment case for the unremarkable proposition that when essential facts are within the other party's control, summary judgment must be denied. (Opp'n at 12.) This case has nothing to do with fact questions on summary judgment and everything to do with the pleading requirement for tortious interference with contract, which plainly requires an allegation of a specific enforceable contract that has been interfered with and, as a result, breached. That Cablevision has failed to *plead* the breach of even one such specific enforceable contract by anyone is the defect that mandates dismissal.

interference by the Jets. That Cablevision cannot manage this allegation even now makes plain that its claim is defective as a matter of law.

### B. Cablevision Fails to Allege Tortious Interference With Prospective Business Relations

Cablevision's claims for interference with prospective business relations with customers and with the construction firms it identified are similarly flawed. Cablevision does not dispute the pleading requirements. Rather, Cablevision takes issue *with its own factual allegations* hoping to generate fact questions concerning whether, assuming the interference, Cablevision has properly alleged that the Jets acted for the sole purpose of inflicting harm or effected the interference by wrongful means. Cablevision's attempt to rewrite its counterclaims and disclaim the materials it attached to its pleading should be rejected.

#### 1. Cablevision's Counterclaims Demonstrate That the Jets Could Not Have Acted Solely to Harm Cablevision

There really is no question that a defendant does not interfere solely to inflict harm on a plaintiff when pursuing its own competing interest. Thus, interference may be excused "where the interference is intended at least in part to advance the competing interest of the interferer." *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, No. 97 Civ. 5499, 2000 U.S. Dist. LEXIS 2604, at *106 (S.D.N.Y. Mar. 9, 2000) (citation omitted). That is precisely what Cablevision alleged in its counterclaims. Concerning cable customers, Cablevision itself alleged that the Jets initiated the telemarketing campaign with DirecTV to contact Cablevision's cable customers to discuss the Jets' proposed stadium in response to Cablevision's attacks on the project. (*See* Answer & Am. Countercls. at ¶¶ 204, 208.) Thus, it is Cablevision, and not the Jets, that has alleged facts that defeat Cablevision's claim that the Jets acted solely to harm Cablevision.

Moreover, Cablevision attached to its opposition papers a copy of a news article about the alleged telemarketing campaign and made a special point of arguing that the Court should "consider the article quoted herein because Cablevision clearly incorporated that article into its Amended Counterclaims by reference." (Opp'n at 15 n.10.) Cablevision has pled the following additional facts in the news article: the Jets "teamed up with DirecTV in response to Cablevision's fierce opposition to the proposed 1.4 billion dollar football stadium on Manhattan's far West Side"; "[d]uring the past year, Cablevision has tried to scuttle the controversial stadium plan"; Cablevision was "waging a costly misinformation campaign to try to halt [the] project . . ."; the telemarketing campaign calls "begin with information about the stadium proposal . . ."; the Jets were "considering offering a $50 dollar gift certificate for team paraphernalia as a further incentive to switch"; and Cablevision remained confident that its cable customers would not be swayed by the Jets and DirecTV's "marketing . . . ." (Mastro Decl. Ex. 5, Michael Saul, *Team Takes Direct Swipe at Cablevision*, N.Y. Daily News, Jan. 16, 2005).

Having incorporated this article into its pleading, Cablevision cannot ask the Court to ignore its contents, which conclusively state that the Jets used the telemarketing campaign as a marketing tool to build support for the team and to respond to Cablevision's "fierce" attacks and "misinformation campaign" directed at the stadium project. Cablevision's pleadings thus flatly contradict any assertion that the Jets were acting solely to inflict harm on Cablevision. *See I.S. Sahni, Inc. v. Scirocco Fin. Group, Inc.*, No. 04 Civ. 9251, 2005 U.S. Dist. LEXIS 21876, at *12 (S.D.N.Y. Sept. 28, 2005) ("If the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint") (internal quotation omitted).

Cablevision also disingenuously seeks to avoid dismissal of its claims with its conclusory allegation that the Jets acted solely to inflict harm on them when they allegedly interfered with Cablevision's prospective relations with several stadium construction firms by asking them to choose between working on the Jets' stadium project and Cablevision's Madison Square Garden renovation project. Once again, there is no fact question here because Cablevision's own allegations demonstrate that (1) the Jets were attempting to build, and yet Cablevision was "fiercely" opposing, the competing stadium; and (2) all of these firms were extremely qualified service providers in facilities design and construction -- services the Jets needed to build the competing stadium. (Answer & Am. Countercls. at ¶¶ 150, 204.) These allegations demonstrate that the Jets pursued their own interests and flatly contradict the contention that the Jets acted solely to harm Cablevision.[7]

### 2. Cablevision Does Not Allege Wrongful Means

Finally, Cablevision argues that its claims for tortious interference with prospective business relations should go forward because it alleged that the Jets interfered using wrongful means. Cablevision is wrong. The only conclusory allegation that Cablevision offers with respect to its customers is that the "Jets made 'false statements.'" (Opp'n at 16, citing to Answer & Am. Countercls.) This is insufficient to constitute an allegation of wrongful means. *See, e.g., Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 499-500 (S.D.N.Y. 2002) (dismissing interference claims based on misrepresentation because it failed to allege "who made the

---

[7] Cablevision's argument that one of these vendors offered to implement a "'Chinese wall' . . . to ensure that none of the personnel involved in the Garden project would have any involvement in the Jets stadium project" misses the point. (Opp'n at 18 n.14.) Whether Cablevision thinks the Jets should have been willing to allow vendors to work on both projects at the same time subject to a "Chinese Wall" is irrelevant; the point is that Cablevision's own allegations demonstrate the Jets could not have been acting solely to harm Cablevision in asking vendors to choose to work on only one project given the obvious potential for conflicts of interest.

allegedly false statements, the contents of such statements, and to whom such statements were made"). Cablevision offers no response to this authority.

Cablevision erroneously claims that it can survive dismissal because it alleges the Jets used wrongful means to interfere with these construction firms. Although Cablevision did not allege what wrongful means the Jets used to interfere with these relationships, Cablevision now argues that the wrongful means consisted of the "wrongful exertion of economic pressure" on these construction firms. (Opp'n at 18.) The New York Court of Appeals has made clear that an allegation such as Cablevision's is patently insufficient to state a claim. *See Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1102-05, 3 N.Y.3d 182, 189-92 (2004) (allegation of economic pressure must amount to "extreme and unfair" or "egregious wrongdoing"). It is frivolous to suggest that asking these prominent and successful construction firms to choose between working with Cablevision to renovate Madison Square Garden and working with the Jets to develop its competing stadium project could ever amount to "extreme and unfair" or "egregious" economic pressure. *Id.* at 1102-05, 3 N.Y.3d at 189-92.[8]

## CONCLUSION

For all of the foregoing reasons, the Jets respectfully request that the Court dismiss Cablevision's amended counterclaims.

---

[8] Cablevision tries to avoid this result by quoting extensively from cases decided prior to the Court of Appeals decision in *Carvel Corp.* (*See* Opp'n at 19-20 (citing, for example, *Drug Emporium, Inc. v. Blue Cross of W. N.Y., Inc.*, 104 F. Supp. 2d 184, 192 (W.D.N.Y. 2000), and *Tasso v. Platinum Guild Int'l*, No. 94 Civ. 8288, 1997 U.S. Dist. LEXIS 252, at *16-18 (S.D.N.Y. Jan. 16, 1997)).) To the extent these cases are to the contrary, *Carvel Corp.* clearly controls.

Dated: New York, New York
January 24, 2006

David Boies
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
914-749-8200

Robert J. Dwyer
Paul R. Verkuil
Alanna C. Rutherford
BOIES, SCHILLER & FLEXNER LLP
570 Lexington Avenue
New York, New York 10022
212-446-2300

*Of Counsel*:
Jonathan D. Schiller
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, District of Columbia 20015
202-237-2727

Marc E. Kasowitz
Daniel R. Benson
Daniel J. Fetterman
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
212-506-1700